UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CHRISTOPHER R. YORK,<br><br>   Plaintiff,<br><br>v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social<br>Security,<br><br>   Defendant. | No. CV-05-5088-MWL<br><br>ORDER GRANTING DEFENDANT'S<br>MOTION FOR SUMMARY JUDGMENT |

  BEFORE THE COURT are cross-motions for summary judgment, noted for hearing without oral argument on April 10, 2006. (Ct. Rec. 12, 15). Plaintiff Christopher York ("Plaintiff") filed a reply brief on April 10, 2006. (Ct. Rec. 17). Attorney D. James Tree represents Plaintiff; Special Assistant United States Attorney Richard M. Rodriguez represents the Commissioner of Social Security ("Commissioner"). The parties have consented to proceed before a magistrate judge. (Ct. Rec. 6). After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment (Ct. Rec. 15) and **DENIES** Plaintiff's Motion for Summary Judgment (Ct. Rec. 12).

///

## **JURISDICTION**

On February 12, 2002, Plaintiff protectively filed an application for Disability Insurance Benefits ("DIB"), alleging disability since October 1, 2001,[1] due to a fracture on his left big toe and residual arthritis in that toe.  (Administrative Record ("AR") 83-85, 110).  The application was denied initially and on reconsideration.

Administrative hearings were held on September 24, 2003, March 24, 2004, and July 22, 2004, before Administrative Law Judge ("ALJ") R. J. Payne.  (AR 255-357).  Testimony was taken from Plaintiff, medical experts Glen Almquist, M.D., and William Newman, M.D., and vocational expert Tom Moreland.  (AR 255-357).  The ALJ issued a decision on August 27, 2004, finding that Plaintiff was not disabled.  (AR 14-25).  The Appeals Council denied a request for review, and the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g) on September 7, 2005.  (Ct. Rec. 1).

## **STATEMENT OF FACTS**

The facts have been presented in the administrative hearing transcript, the ALJ's decision, the briefs of both Plaintiff and the Commissioner and will only be summarized here.  Plaintiff was 43 years old on the date of the ALJ's decision.  (AR 15).  He completed high school and had been attending classes at a community college for about one year.  (AR 116, 294).  His past

---

[1] Plaintiff initially indicated he became unable to work on October 1, 2001 (AR 83); however, in his Disability Report of the same date, Plaintiff reported he became unable to work on January 28, 2002.  (AR 110).

1  relevant work consists of work as a cook, fast food worker,
2  telephone sales representative, retail supervisor, book sales
3  person, and hearing aid salesperson. (AR 15, 101, 303-310).

4  At the administrative hearing held on March 24, 2004,
5  Plaintiff testified he attends three classes, four days a week,
6  from 8:00 a.m. to 11:30 a.m., at Columbia Basin Community College.
7  (AR 294-295). He rides a bus to his classes and indicated that he
8  drives to doctor's appointments and to the grocery store, but he
9  has not been issued a handicapped parking permit. (AR 296-297).
10 His last extended trip occurred when he spent about two weeks in
11 Florida to attend a funeral in December of 2003. (AR 296-297).

12 Plaintiff stated that his main problem was the pain resulting
13 from an injury to his big toe on his left foot. (AR 297). In
14 1989, while working as a cook at the Olive Garden, he dropped a
15 lasagna pan on his foot which has since resulted in his current
16 toe problems. (AR 308-309). He testified that if it were not for
17 his toe pain, he would be able to work. (AR 299).

18 Plaintiff described the toe pain as a throbbing pain with
19 swelling and indicated that, when swelled, he could not put much
20 weight on it. (AR 301). He stated that the pain comes and goes,
21 but that he experiences pain about 18 hours a day. (AR 301). On
22 a scale of one to 10, with zero being no pain and 10 being
23 equivalent to having one's hand on fire, Plaintiff indicated that
24 his pain was generally at a seven and, at its worse, a nine. (AR
25 302). He experiences level nine pain about once or twice a week.
26 (AR 302). He stated that, at the time of the administrative
27 hearing, his level of pain was about a five, and he had not taken
28 ///

any pain medications on the day of the administrative hearing. (AR 303).

Plaintiff testified that he could walk around the block a couple of times, stand for about 30 to 45 minutes at a time, and sit for an hour or two. (AR 299-300). He stated that he could sit longer if allowed to prop his leg up to hip height. (AR 300). He indicated that his upper body is strong and he could lift 50 to 80 pounds without it being a problem. (AR 300).

Plaintiff testified that, on a typical day, he gets up at 5:30 a.m. and goes to bed around 11:00 p.m., getting, on average, about six or seven hours of sleep per night. (AR 311). When he wakes up in the morning, he reads the newspaper and watches the morning news, fixes breakfast for his wife and baby if he wakes up before his wife, and then reads or studies for his classes. (AR 311-312). He leaves by 7:00 a.m. to get to school by 8:00 a.m. (AR 312). He attends classes until 11:30 a.m. and usually goes to the library thereafter for about an hour to work on homework. (AR 312). He arrives at home at around 1:00 p.m. or 1:30 p.m. and prepares to cook dinner and then works on homework until dinner time. (AR 312-313). After dinner, he helps care for the baby and studies and does his homework for the rest of the evening. (AR 313).

Plaintiff testified that he attends church every Sunday and stated that the two hour service did not cause him trouble because he is sitting during the service. (AR 314). He indicated that he does of lot of things for the church, like baking cakes and pies, but was not a member of any social clubs or organizations. (AR 314).

At the administrative hearing held on July 22, 2004, Plaintiff testified that he was scheduled to have the pins removed from his toe but that the surgery had been postponed because x-rays revealed that the bone in his toe still had not healed. (AR 330-331). He was informed that two additional surgeries were necessary. (AR 331). He stated that he elevates his leg on a regular basis, throughout the day, when he does not have an appointment and is at home. (AR 331-332). He indicated that he elevates his leg for more than half of the day. (AR 332).

## **SEQUENTIAL EVALUATION PROCESS**

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a Plaintiff shall be determined to be under a disability only if any impairments are of such severity that a Plaintiff is not only unable to do previous work but cannot, considering Plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person

is engaged in substantial gainful activities.  If so, benefits are denied.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If not, the decision maker proceeds to step two, which determines whether Plaintiff has a medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If Plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied.  If the impairment is severe, the evaluation proceeds to the third step, which compares Plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1.  If the impairment meets or equals one of the listed impairments, Plaintiff is conclusively presumed to be disabled.  If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents Plaintiff from performing work which was performed in the past.  If a Plaintiff is able to perform previous work, that Plaintiff is deemed not disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  At this step, Plaintiff's residual functional capacity ("RFC") assessment is considered.  If Plaintiff cannot perform this work, the fifth and final step in the process determines whether Plaintiff is able to perform other work in the national economy in view of Plaintiff's residual functional capacity, age, education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon Plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once Plaintiff establishes that a physical or mental impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) Plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which Plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support

a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## ALJ'S FINDINGS

The ALJ found at step one that Plaintiff has not engaged in substantial gainful activity since the alleged onset date. (AR 15). At step two, the ALJ found that Plaintiff has the severe impairments of great toe pain status post fusion, left knee

problems, and obesity, but that he does not have an impairment or combination of impairments listed in or medically equal to one of the Listings impairments. (AR 24).

The ALJ concluded that Plaintiff has the RFC to perform a wide range of sedentary work. (AR 21). The ALJ found that Plaintiff can lift and/or carry 50 pounds occasionally and 20 pounds frequently, standing and walking is limited to at least two hours in an eight-hour workday, sitting or pushing and pulling is not affected by his impairments, he can occasionally climb ramps, stairs, or ladders, he should avoid climbing ropes or scaffolds, he can occasionally engage in balancing, kneeling, crouching, crawling or stooping, and he is limited in exposure to hazards, such as machinery or heights. (AR 21).

At step four of the sequential evaluation process, the ALJ found that Plaintiff retains the RFC to perform his past relevant work as a telephone sales representative or hearing aid salesperson.[2] (AR 22, 23). The ALJ also determined alternatively at step five that, within the framework of the Medical-Vocational Guidelines ("Grids") and based on the vocational expert's testimony and Plaintiff's RFC, age, education, and work experience, there were a significant number of sedentary-level jobs in the national economy which he could perform despite his limitations. (AR 22-23). Examples of such jobs include work as a cashier, in electrical assembly, as a surveillance system monitor,

---

[2] Although the findings section of the ALJ's opinion states that Plaintiff "is unable to perform any of his past relevant work" (AR 24), this was clearly a typographical or scrivener's error as the body of the ALJ's decision specifically holds that Plaintiff retains the capacity to perform his past relevant work as a telephone sales representative and a hearing aid salesperson (AR 22, 23).

as a document preparer, and as a telephone solicitor. (AR 23). Accordingly, the ALJ determined at step four of the sequential evaluation process, and alternatively at step five, that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 22-23).

**ISSUES**

Plaintiff contends that the Commissioner erred as a matter of law. Specifically, he argues that:

1. The ALJ improperly rejecting the medical opinion of treating physician Darian Van Gorkum, D.P.M.; and

2. The ALJ erred at step five of the sequential evaluation process by concluding that Plaintiff could perform work despite the limitations assessed by Dr. Van Gorkum.

This Court must uphold the Commissioner's determination that Plaintiff is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.

**DISCUSSION**

**A.   Physical RFC**

Plaintiff contends that the ALJ erred by not including in his RFC determination that Plaintiff needed to elevate his foot on a daily basis for approximately half the day. (Ct. Rec. 13, pp. 12-14). Plaintiff specifically asserts that the ALJ failed to provide clear and convincing reasons for rejecting the medical opinion of treating physician Darian Van Gorkum, D.P.M., in this regard. (Ct. Rec. 13, pp. 16-18). The Commissioner responds that
///
///

the ALJ properly evaluated the medical evidence of record and properly assessed Plaintiff's RFC in this case. (Ct. Rec. 16, pp. 8-18).

The courts distinguish among the opinions of three types of physicians: treating physicians, physicians who examine but do not treat the claimant (examining physicians) and those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater,* 81 F.3d 821, 839 (9th Cir. 1996). A treating physician's opinion is given special weight because of his familiarity with the claimant and his physical condition. *Fair v. Bowen,* 885 F.2d 597, 604-05 (9th Cir. 1989). Thus, more weight is given to a treating physician than an examining physician. *Lester*, 81 F.3d at 830. However, the treating physician's opinion is not "necessarily conclusive as to either a physical condition or the ultimate issue of disability." *Magallanes v. Bowen,* 881 F.2d 7474, 751 (9th Cir. 1989) (citations omitted).

The Ninth Circuit has held that "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 830. Rather, an ALJ's decision to reject the opinion of a treating or examining physician, may be *based in part* on the testimony of a nonexamining medical advisor. *Magallanes*, 881 F.2d at 751-55; *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). The ALJ must also have other evidence to support the decision such as laboratory test results, contrary reports from examining
///
///

physicians, and testimony from the claimant that was inconsistent with the physician's opinion. *Magallanes*, 881 F.2d at 751-52; *Andrews*, 53 F.3d 1042-43.

Dr. Van Gorkum, a podiatrist, has treated Plaintiff's foot impairment since January 22, 2002. (AR 221). On January 22, 2002, Dr. Van Gorkum noted that Plaintiff reported he was a "pretty active individual" but that activity caused pain in his left big toe. (AR 143). Plaintiff related no history of injury to the big toe joint at that time. (AR 143). Plaintiff opted for the recommended fusion of the MPJ joint versus an implant subsequent to being informed that insurance would not cover the implant. (AR 145-151). On March 18, 2002, one week following the operation, Plaintiff reported the pain was much better and he was able to function. (AR 152). Dr. Van Gorkum indicated that the fusion of the first MPJ was doing well. (AR 152). On March 25, 2002, Dr. Van Gorkum noted that stability of the fusion site was good, x-rays showed fixation of fusion site to be intact with good position and alignment and the fusion of the first MPJ was going well. (AR 178). Plaintiff stated that he was doing pretty good and the pain was getting a little better for him. (AR 178). On April 8, 2002, despite Plaintiff reporting that he brought his foot down hard resulting in pain, Dr. Van Gorkum found that there was no displacement of the fusion or change of the fixation and that it was doing fairly well. (AR 179). On April 29, 2002, Plaintiff reported he was able to ambulate well with crutches or walking just on his heel with the walker boot and that he felt he was doing well. (AR 180). Dr. Van Gorkum indicated that the fusion site was doing well. (AR 180).

On July 15, 2002, Plaintiff stated that he was doing better, the swelling was getting better and things were improving for him. (AR 181). Dr. Van Gorkum noted swelling within normal limits and indicated that the fusion was doing reasonably well. (AR 181). On July 30, 2002, Dr. Van Gorkum approved the prescription of a cane for up to one year and noted that Plaintiff's prognosis was "good." (AR 182). On August 27, 2002, Plaintiff reported to Dr. Van Gorkum that, despite continued swelling, he was doing better, was active on his feet and had no car and thus walked pretty much everywhere. (AR 183). Dr. Van Gorkum indicated that there was good clinical fusion of the fusion site, the edema was much less and the fusion was doing reasonably well. (AR 183).

On October 29, 2002, Plaintiff related that he was able to get around, but that it was painful for him. (AR 185). Dr. Van Gorkum indicated that there was good alignment of the fusion and minimal edema. (AR 185). On January 20, 2003, Plaintiff stated that the fusion was feeling better, but he still could not wear a standard shoe without discomfort. (AR 187). Dr. Van Gorkum indicated that the fusion appeared to have healed well and diagnosed painful postoperative status. (AR 187).

On March 5, 2003, over one year following the operation, Plaintiff stated that he was "doing much better," and there was really no swelling. (AR 188). It was noted that Plaintiff was on his feet quite a bit and that this caused him pain. (AR 188). Dr. Van Gorkum opined that the procedure looked good clinically and the last x-ray looked "great with complete trabeculation." (AR 188).

///

On May 6, 2003, Plaintiff reported that he can get around fairly well, and Dr. Van Gorkum related that "everything looks pretty good." (AR 189). On December 8, 2003, Dr. Van Gorkum noted discomfort in the fusion sited although, clinically, the fusion was good. (AR 220). The plan was to remove the hardware from the toe. (AR 220). On February 24, 2004, Dr. Van Gorkum filled out a medical report which indicated that Plaintiff did not need to lie down during the day, he did not have a physical or mental condition that produced pain, he would be restricted from regular work by the limitation of pain resulting from being on his feet for a full day, and his overall prognosis was good. (AR 221-222).

On May 11, 2004, Dr. Van Gorkum noted that Plaintiff had been pretty active lately and that Plaintiff had reported that he needs pain medication once in awhile. (AR 239). Dr. Van Gorkum indicated that the joint appeared to be clinically very solid; however, surprisingly, the x-rays taken on that date revealed a partial radiolucent line at the fusion site. (AR 239). Dr. Van Gorkum stated that the last x-rays did not show a partial radiolucent line, but rather showed good trabeculation and consolidation of the fusion, fixation had not moved or changed, it did not appear to be loosened, and alignment had not changed. (AR 239). He opined that Plaintiff must have loosened the fusion site over time with his activity. (AR 239). Dr. Van Gorkum diagnosed non-union/delayed union first MPJ fusion, but did not believe it to be a complete non-union. He felt that there was enough trabeculation across the joint to stabilize it, but indicated he would like to see complete trabeculation across the entire union

site. (AR 239). Dr. Van Gorkum stated that the hardware would not be removed at that time. (AR 239).

On a check-box form provided by Plaintiff's attorney on July 22, 2004, Dr. Van Gorkum marked that Plaintiff needs to elevate his leg to or above hip level, on average, for half of the day. (AR 244). On July 26, 2004, Dr. Van Gorkum noted that Plaintiff's pain was better but he still had swelling and pain in the toe. (AR 245). He instructed Plaintiff to stay off of his feet as much as possible and noted that Plaintiff keeps his foot above his heart level at least 50% of the time. (AR 245).

On August 4, 2004, Plaintiff reported he was not staying off of his feet and arrived wearing a normal shoe. (AR 250). Dr. Van Gorkum indicated that Plaintiff was not complaint with being non-weight bearing. (AR 250). A radiolucent line was still visible. (AR 250). On August 25, 2004, Dr. Van Gorkum noted that x-rays revealed a radiolucent line and again indicated that Plaintiff was not being compliant with being non-weight bearing. (AR 249). Non-union across the fusion site was viewed on September 23, 2004, October 22, 2004, and November 24, 2004. (AR 246-248).

Although Dr. Van Gorkum marked a check-box form[3] provided by Plaintiff's attorney on July 22, 2004, indicating that Plaintiff needed to elevate his leg, on average, for half of the day (AR 244), the checkmark on this form does not explain the basis for or describe any significant limitations caused by this "need." Moreover, such a finding, without more, does not necessarily limit

---

[3] A check-box form is entitled to little weight. *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (stating that the ALJ's rejection of a check-off report that did not contain an explanation of the bases for the conclusions made was permissible).

- 15 -

or restrict work related activities.  For example, elevating the leg could occur sporadically; i.e, during normal work breaks and before and after the workday.  It is significant to note that Plaintiff testified on July 22, 2004, that he only elevates his leg, throughout the day, when he does not have an appointment and is at home.  (AR 331-332).

A review of Dr. Van Gorkum's medical records reveals that Plaintiff was quite active and was able to get around fairly well, despite pain.  Dr. Van Gorkum's medical reports indicate that, to be compliant with his medical advice, Plaintiff was required to stay off his feet as much as possible and to be non-weight bearing on the first MPJ site.  Plaintiff was admittedly non-complaint with this advice.  (AR 249-250).  Dr. Van Gorkum also opined that Plaintiff would be restricted from regular work by the limitation of pain resulting from being on his feet for a full day.  (AR 222).  These limitations are included in the ALJ's RFC determination which holds that Plaintiff's standing and walking is limited to at least two hours in an eight-hour workday.  (AR 21).

The ALJ's RFC is further supported by other medical professionals of record.  At the administrative hearing held on September 24, 2003, medical expert, Dr. Almquist, reported that there should be no pain associated with a fusion.  (AR 16, 261). The medical expert testifying at the March 24, 2004, supplemental hearing, Dr. Newman, concurred with Dr. Almquist that there was no basis for Plaintiff's continued toe pain because a surgically fused joint should not be painful, particularly as the record showed Plaintiff's fusion to be solid.  (AR 19, 272-273).  Dr. Newman filled out a RFC assessment form indicating that Plaintiff

could sit, stand, and/or walk about six hours in an eight-hour workday, occasionally engage in climbing, balancing, or stooping, and occasionally to never engage in kneeling, crouching or crawling, but was otherwise not limited. (AR 225).

Following the later submission of recent records from Dr. Van Gorkum, Dr. Nelson filled out a Medical Source Statement of Ability to Do Work-Related Activities (Physical) form concluding that Plaintiff could frequently lift and carry 50 pounds, occasionally lift and carry 20 pounds, stand and/or walk at least two hours in an eight-hour workday, sit and push and pull without restriction, only occasionally climb, balance, kneel, crouch, crawl or stoop, had no limitations with regard to manipulative functions and visual/communicative functions, and should avoid hazards. (AR 240-243).

On October 21, 2003, Saleem Khamisani, M.D., examined Plaintiff and opined that Plaintiff should avoid prolonged standing, walking for more than 30 minutes at a time, repetitive climbing and squatting. (AR 217). Dr. Khamisani also filled out a Medical Source Statement of Ability to Do Work-Related Activities (Physical) form concluding that Plaintiff had no limitations on lifting, carrying or sitting, could stand and/or walk at least two hours in an eight-hour workday, was limited in pushing and pulling with the lower extremities, could only occasionally climb, balance, kneel, crouch, crawl or stoop, and had no limitations with regard to manipulative functions, visual/communicative functions and environmental restrictions. (AR 208-211).

///

All of the medical reports of record, including the findings of Dr. Van Gorkum, support the ALJ's RFC determination that Plaintiff can perform a wide range of sedentary work. (AR 21). The ALJ thoroughly summarized the record (AR 16-21) and, consistent with the findings of all medical sources of record, determined that Plaintiff can lift and/or carry 50 pounds occasionally and 20 pounds frequently, standing and walking is limited to at least two hours in an eight-hour workday, sitting or pushing and pulling is not affected by his impairments, he can occasionally climb ramps, stairs, or ladders, he should avoid climbing ropes or scaffolds, he can occasionally engage in balancing, kneeling, crouching, crawling or stooping, and he is limited in exposure to hazards, such as machinery or heights. (AR 21). There is no basis for the ALJ including an additional limitation in his RFC determination that Plaintiff is required to elevate his foot half the day. This restriction is simply not supported by the record evidence. The ALJ's RFC finding is supported by substantial evidence and free of legal error.

**B.  Ability to Perform Work**

Plaintiff asserts that the ALJ erred by concluding that he could perform work despite the limitations assessed by Dr. Van Gorkum. (Ct. Rec. 13, pp. 18-19). Specifically, Plaintiff argues that, when the limitation of the need to elevate his leg on a daily basis was presented in a hypothetical to the vocational expert, the vocational expert indicated that Plaintiff would be unemployable.[4] (Ct. Rec. 13, pp. 18-19; AR 349-350). Therefore,

---

[4] Vocational expert Tom Moreland testified that if the need to elevate his leg means that he would need to be in a reclined position, it would be difficult to perform any job and thus would prelude employment. (AR 350).

Plaintiff contends that the ALJ erred by relying on an incomplete hypothetical and that a complete hypothetical, one containing the need to elevate his leg, would have resulted in a finding that there would be no job Plaintiff could perform. (Ct. Rec. 13, pp. 18-19; AR 349-350).

Based on the fact that the undersigned rejects Plaintiff's argument that the ALJ's RFC determination required an additional limitation, *supra*, Plaintiff's argument regarding the ALJ's finding that he has the ability to perform work also fails.

As determined above, the ALJ's RFC finding is supported by substantial evidence and free of legal error. The ALJ did not err by failing to include in his RFC determination that Plaintiff needed to elevate his foot on a daily basis for approximately half the day. *Supra*. The ALJ's hypothetical to the vocational expert was consistent with Plaintiff's functional limitations as determined by the ALJ. (AR 346-349). Since the hypothetical relied upon by the ALJ mirrored the ALJ's appropriate RFC determination, the ALJ did not err by according weight to the vocational expert's testimony in response to the hypothetical to make his conclusions in this case.

## **CONCLUSION**

Having reviewed the record and the ALJ's conclusions, this Court finds that the ALJ's decision that Plaintiff is able to perform work that exists in significant numbers in the national economy is supported by substantial evidence and free of legal

///
///
///

error.  Therefore, Plaintiff is not disabled within the meaning of the Social Security Act.  Accordingly,

**IT IS ORDERED**:

1. Plaintiff's Motion for Summary Judgment (**Ct. Rec. 12**) is **DENIED**.

2. Defendant's Motion for Summary Judgment (**Ct. Rec. 15**) is **GRANTED**.

3. The District Court Executive is directed to enter judgment in favor of Defendant, file this Order, provide a copy to counsel for Plaintiff and Defendant, and **CLOSE** this file.

IT IS SO ORDERED.

**DATED** this ___15th___ day of June, 2006.

                                                s/Michael W. Leavitt
                                                  MICHAEL W. LEAVITT
                                        UNITED STATES MAGISTRATE JUDGE